CLEAR WITH COMPUTERS,
LLC, Plaintiff,

v.

DICK'S SPORTING GOODS,
INC., Defendant.

CASE NO. 6:12–CV–674

United States District Court, E.D.
Texas, Tyler Division.

Signed 01/21/2014

Richard C. Weinblatt, Stamatios Stamoulis, Stamoulis & Weinblatt LLC, Wilmington, DE, Andrew W. Spangler, Spangler Law P.C., Longview, TX, for Plaintiff.

Benjamin S. Lin, Mark P. Wine, Michael C. Chow, Thomas J. Gray, Will Hussein Melehani, Orrick Herrington & Sutcliffe, LLC, Irvine, CA, Eric Hugh Findlay, Roger Brian Craft, Findlay Craft, Tyler, TX, Indranil Mukerji, Fish & Richardson PC, Washington, DC, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

LEONARD DAVIS, UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion for Judgment on the Pleadings (Docket Nos. 59, 60, 61, 63),[1] and Defendants' Motion to Stay Pending a Covered Business Method Review (Docket Nos. 83, 87, 89).[2] On December 19, 2013, the Court heard oral arguments on the Motions. For the following reasons, Defendants' Motion for Judgment on the Pleadings is **GRANTED** and Defendant's Motion to Stay Pending Covered Business Method Review is **DENIED AS MOOT**.

## BACKGROUND

Plaintiff Clear with Computers, LLC ("CWC") asserts claims 1–4, 10 and 11 of U.S. Patent No. 8,266,015 ("the '015 Patent") against Defendants.[3] The '015 Patent is entitled "Inventory Sales System and Method" and is directed to a "system which facilitates sales from an inventory of the selling entity." '015 Patent col. 1:15–16. The '015 Patent issued September 11, 2012 and traces its priority to Application No. 08/879,070, which was filed on June 19, 1997.

The '015 Patent's specification explains that sellers often prefer to sell from inventory rather than by selling custom orders.

---

**1.** All Defendants have requested summary judgment on the pleadings. Defendant The Finish Line, Inc. filed the original motion on August 23, 2013. Docket No. 59. On August 29, 2013, Defendant Hugo Boss Fashions Inc. filed a substantially identical motion. Docket No. 60. On August 30, 2013, Defendant Tory Burch LLC effectively joined these two motions. Docket No. 61 at 3 ("In the interest of judicial economy, Tory Burch ... hereby adopt[s], reiterate[s], and incorporate[s] by reference, as if fully set forth herein, the arguments and authorities set forth in Defendant The Finish Line's Motion and Defendant Hugo Boss' Motion."). On September 4, 2013, Defendants Dick's Sporting Goods, Inc.; Forty Niners Football Company LLC; Helly Hansen (U.S.) Inc.; Levi Strauss & Co.; NFL Enterprises LLC; Spanx, Inc.; and MLB Advanced Media L.P. joined these two motions as well. Docket No. 63 at 3. Plaintiff Clear with Computers, LLC filed individual responses to these motions. Docket Nos. 64, 69, 70. In the interest of judicial economy, the Court will treat Hugo Boss's motion (Docket No. 60) as joined by all Defendants. The relevant briefings for this motion are Docket No. 60 (motion), No. 69 (response), No. 74 (reply), and No. 80 (surreply).

**2.** At the December 19 hearing, all Defendants joined the motion and requested a stay for 90 days pending the U.S. P.T.O.'s decision to initiate a Covered Business Method Review for the asserted patent. Docket No. 115 at 8, 10.

**3.** CWC has sued three sets of Defendants for infringement of the '015 Patent. The first two sets are consolidated in the above cause for pretrial purposes only, excluding venue motions. CWC sued the third set on August 2, 2013. This third set is yet to be consolidated and did not participate in these motions.

*Id.* at col. 1:56–58. However, as the number of options, features or variations for a product increases, finding a specific product in inventory which meets the customer's desires becomes difficult, and often sales representatives custom order the desired product instead of searching through existing inventory. *Id.* at col. 1:47–52. The invention attempts to solve this problem with computer technology that "allows a sales representative to review, select, and prepare a solution for the customer." *Id.* at col. 6:23–27. The specification does not describe specific programming or hardware to accomplish this, but rather recites "any type of computer system" may be sufficient. *Id.* at col. 4:15–16. The claimed method broadly applies to environments where such computer related technology is used and selling products from an existing inventory may be desired, otherwise known as a technology-enabled selling environment. *Id.* at col. 3:38–39.

## MOTION ON THE PLEADINGS

Independent claim 1 is a method claim comprising four steps. *Id.* at col. 13:36–47. The remaining asserted claims are method claims that depend from claim 1. *Id.* at col. 13:48–14:22. Defendants move for judgment on the pleadings that the '015 Patent is invalid for claiming ineligible subject matter under 35 U.S.C. § 101.

## APPLICABLE LAW

### Motion on the Pleadings

A motion for judgment on the pleadings provides the Court with a method for summary adjudication of a defense after the pleadings are closed, but before trial. *See* Fed. R. Civ. P. 12(c). The standard for deciding a Rule 12(c) motion is the same as that for deciding a Rule 12(b)(6) motion to dismiss. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir.2007). The Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* Thus, the Court determines whether the complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *Erickson v. Pardus*, 551 U.S. 89, 93–94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

### Eligible Subject Matter

Section 101 of the Patent Act defines the four broad categories of patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101 (2006). "In choosing such expansive terms ... modified by the comprehensive 'any,' Congress plainly contemplated that the patent laws would be given wide scope." *Bilski v. Kappos*, 561 U.S. 593, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010) (*"Bilski II"*) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980)). Although Section 101 encompasses a broad domain of patentable subject matter, the Supreme Court has recognized three exceptions: "laws of nature, physical phenomena, and abstract ideas." *Chakrabarty*, 447 U.S. at 309, 100 S.Ct. 2204.

Abstract ideas are deemed ineligible subject matter in order to prevent a "monopoly" over the idea that would "preempt" its use in all fields. *Bilski II*, 130

S.Ct. at 3231; *see also Gottschalk v. Benson*, 409 U.S. 63, 67, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972) (emphasizing that "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work"). However, while abstractness places subject matter outside the statutory categories, "inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed.Cir.2010). Thus a claim may cover an application of an abstract idea but may not cover the abstract idea itself. *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1343 (Fed.Cir.2013).

■ Assessing whether a claim covers an abstract idea or its application involves two steps. First, the Court identifies what, if any, abstract idea is involved in the claim; and second, "whether *meaningful limitations* in the claim make it clear that the claim is not to the abstract idea itself, but to a non-routine and specific application of that idea." *Ultramercial*, 722 F.3d at 1349 n. 2 (Fed.Cir.2013) (emphasis added); *see also CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1282 (Fed.Cir.2013) (plurality opinion) *cert. granted,* — U.S. ——, 134 S.Ct. 734, 187 L.Ed.2d 590 (2013)).

■ A "claim is not meaningfully limited if it merely describes an abstract idea or simply adds 'apply it.'" *Ultramercial*, 722 F.3d at 1346; *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, — U.S. ——, 132 S.Ct. 1289, 182 L.Ed.2d

321 (2012). Nor is a claim meaningfully limited "if it contains only insignificant or token pre- or post-solution activity—such as identifying a relevant audience, a category of use, field of use, or technological environment." *Ultramercial*, 722 F.3d at 1346; *see also Prometheus*, 132 S.Ct. at 1297–98, 1300–01; *Bilski II*, 130 S.Ct. at 3230–31; *Parker v. Flook*, 437 U.S. 584, 595 n. 18, 98 S.Ct. 2522, 57 L.Ed.2d 451 (1978). Likewise, "a claim is not meaningfully limited if its purported limitations provide no real direction, cover all possible ways to achieve the provided result, or are overly-generalized." *Ultramercial*, 722 F.3d at 1346; *see also Prometheus*, 132 S.Ct. at 1300 ("[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable.").

■ On the other hand, a claim is "meaningfully limited when it requires a particular machine or a particular transformation."[4] *Ultramercial*, 722 F.3d at 1347. Likewise, a claim is meaningfully limited when "in addition to the abstract idea, the claim recites added limitations which are essential to the invention." *Id.* These limitations, if essential, "do more than recite pre- or post-solution activity, they are central to the solution itself." *Id.* "[I]n such circumstances, the abstract idea is not wholly pre-empted; it is only preempted when practiced in conjunction with the other necessary elements of the claimed invention." *Id.*; *see also Diamond v. Diehr*, 450 U.S. 175, 182, 187, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981) (holding

---

4. The machine-or-transformation test, while "a useful and important clue," is not "the sole test for eligibility." *Bilski II*, 130 S.Ct. at 3227. According to this test, a process may be patentable if it "(1) is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id.* at 3225–26. Furthermore, the test is more suited to inventions of the Industrial Age rather than the Information Age. *Id.* at 3227–28.

the patent did not pre-empt the use of the mathematical equation, but only its application in the process for curing synthetic rubber).

## ANALYSIS

CWC makes three arguments regarding Defendants' Motion for Judgment on the Pleadings. First, CWC argues it is premature to decide § 101 eligibility prior to formal claim construction. Second, CWC contends the claims are meaningfully limited because they recite a "configuration engine of a computer system" and are further limited to the field of technology–enabled selling. Lastly, CWC argues the claims are eligible because they satisfy either prong of the machine-or-transformation ("MOT") test. These arguments are addressed in turn below.

### Claim Construction

As an initial matter, CWC argues Defendants' Motion is premature prior to formal claim construction. Docket No. 80 at 3. CWC contends Defendants implicitly concede this point by filing proposed constructions for disputed terms in preparation for a *Markman* hearing. *See* Docket No. 69 at 11. Defendants respond that for the purposes of their Motion, the Court is free to construe the claims in the light most favorable to CWC. Docket No. 74 at 4.

 Defendants are correct that a *Markman* hearing is not strictly necessary at this point. *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.),* 687 F.3d 1266, 1274 (Fed.Cir.2012) (accepting the non-movant's construction of the system claims for a § 101 analysis). Though formal claim construction is often required to resolve factual disputes involving a § 101 analysis, the Court may instead require Defendants "to establish that the only plausible construction was one that, by clear and convincing evidence rendered the subject matter ineligible (with

no factual inquiries), or [the Court may] adopt[ ] a construction most favorable to the patentee." *Ultramercial,* 722 F.3d at 1349.

The only disputed term relevant to the eligibility analysis is "configuration engine." CWC proposes "configuration engine" means "computer hardware and/or software, including one or more solvers, that access information from a database to configure product category and/or options information for a product." Docket No. 102 at 4. Defendants criticize CWC's construction because claim 16 expressly recites solvers whereas claim 1 does not; however, for the purposes of the motion, Defendants accept CWC's construction. Docket No. 115 at 30.

 In this procedural posture, the Court is not at liberty to resolve factual disputes underlying claim construction. The fact that claim 16 expressly requires solvers is not itself sufficient to find claim 1's term "configuration engine" does not include one or more solvers. Thus, for the purposes of this Order only, the Court adopts CWC's construction of "configuration engine" as "computer hardware and/or software, including one or more solvers, that access information from a database to configure product category and/or options information for a product."

### Patent Ineligibility of an Abstract Idea—claim 1

 CWC next argues claim 1 is meaningfully limited because it recites a "configuration engine of a computer system" and is further limited to the field of technology-enabled selling. Claim 1, which all other asserted claims depend from, reads as follows:

A method comprising:

*receiving,* at a configuration engine of a computer system, a query regarding a

product included in an inventory; *determining,* by the configuration engine, (i) a plurality of customization options associated with the product, and (ii) which customization options of the plurality of customization options are included in the inventory; *preparing,* by the configuration engine, a list of the customization options determined to be included in the inventory; and providing, by the configuration engine, the list of customization options for *presentation.*

'015 Patent col. 13:35–47 (emphasis added).

Claim 1 contains four steps which can be generalized as (1) receiving a product query, (2) determining the availability of products and associated options in inventory, (3) preparing a list of available options, and (4) presenting the list. These four steps form the claimed method, and as a method it satisfies § 101's definition of "process" and thus is within a category of patent–eligible subject matter. However, Defendants argue claim 1 falls under the judicial exception of covering an abstract idea and thus is ineligible. Specifically, Defendants argue the claim is drawn to the purely mental process of selling goods from inventory. Docket No. 74 at 5. Though CWC disputes this characterization, CWC's description of the invention merely recites using a configuration engine to facilitate such inventory-based sales. Docket No. 69 at 9 ("[T]he claims are directed to ... using a configuration engine to receive a query from a user about a product, determin[ing] what options are associated with the product as well as which of those products with the associated options are in the inventory ... prepar[ing] a list of those products with the associated options that are in the inventory and provid[ing] the list for presentation."). As both parties' descriptions reveal, claim 1 involves the abstract idea of inventory-based selling.

As claim 1 is drawn to an abstract idea, claim 1's eligibility turns on whether it "contains limitations that meaningfully tie that abstract idea to an actual application of that idea." *Ultramercial,* 722 F.3d at 1349 n. 2. CWC first argues a "computer system with a configuration engine" serves to meaningfully limit the abstract idea of inventory-based selling to its application on a computer system. Docket No. 80 at 5. But claiming a computer implementation of a purely mental process that could otherwise be performed without the use of a computer does not render a claim patentable. *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1375–76 (Fed.Cir.2011); *Dealertrack, Inc. v. Huber,* 674 F.3d 1315, 1333 (Fed.Cir.2012). As Defendants explain, claim 1 can be performed entirely by a human, mentally or with pencil and paper:

A method comprising:

receiving, at a configuration engine of a computer system by a human, a query regarding a product included in an inventory; determining, by the configuration engine by a human, (i) a plurality of customization options associated with the product, and (ii) which customization options of the plurality of customization options are included in the inventory; preparing, by the configuration engine by a human, a list of the customization options determined to be included in the inventory; and providing, by the configuration engine by a human, the list of customization options for presentation.

*See* Docket No. 74 at 6 (substituting claim 1's phrases "configuration of a computer system" and "configuration engine" with the phrase "by a human").

CWC counters that a human being cannot replace a configuration engine, which is construed to include "one or more sol-

vers."[5] According to CWC, the specification contains detailed descriptions of the configuration engine using the solvers to perform the claimed method in a way that a human being is incapable of. Docket No. 115 at 36. CWC's argument, however, misplaces the focus of the eligibility analysis on the specification rather than the claims. *See Dealertrack,* 674 F.3d at 1334 ("In considering patent eligibility under § 101, one must focus on the claims."). Claim 1 does not claim any of these solvers, but only contains passing references to a configuration engine. This deficiency is not solved by CWC broadly construing the configuration engine to include generic solvers. Such a construction does not meaningfully limit the claim despite greater detail in the specification. *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.,* 728 F.3d 1336, 1345 (Fed. Cir.2013) (finding that the claims did not limit an abstract idea, even though the specification contained very detailed software guidelines, because the "claims themselves only contain generalized software components").

■ Next, CWC argues limiting the claim to the field of technology-enabled selling ("TES") is a meaningful limitation. Docket No. 69 at 19. However, "limiting an abstract idea to one field of use [does] not make the concept patentable."[6] *Bilski II,* 130 S.Ct. at 3231 (rejecting the argument that the claims were eligible because they limited the claimed hedging process to its use in commodities and energy markets). Accordingly, claim 1 contains no meaningful limitations to the abstract idea of inventory based selling.

### Machine–or–Transformation Test— claim 1

■ Lastly, CWC argues the claim is eligible because it meets both prongs of the MOT test. According to CWC, claim 1 meets the machine prong because the configuration engine is a specific purpose computer as evidenced by its proposed construction. Docket No. 69 at 24 n.3. CWC further argues the configuration engine is integral to the invention because it performs specific functions "essential to the invention[ ]," which "cannot be done with a pencil and paper." Docket No. 80 at 6. Defendants contend the "configuration engine of a computer system" is merely a general purpose computer without specified programming and that it is not essential to the claimed invention. Docket No. 60 at 9–10.

Contrary to CWC's assertions, CWC's construction fails to distinguish a configuration engine from a general purpose computer. Substituting "general purpose computer" for CWC's construction of "computer hardware and/or software, including one or more solvers, that access information from a database to configure product category and/or options informa-

---

5. The solvers can be generally described as logical rules for compatibility or desirability between inventory product and options. For example, in the context of purchasing a car with different engine and transmission options, the "constraint solver 322 limits the number of units or options available to select from by using engineering relationships ... [t]his solver may specify, for example, that the torque capacity of a transmission must be greater than or equal to the torque produced by an engine coupled to the transmission."

6. Moreover, limiting the claim to the field to TES is illusory. By the patent's own terms, TES is nothing more than using "computerized information and related technology ... to facilitate a sales transaction." '015 Patent col. 1:29–35. Claim 1 is directed to inventory-based selling using a configuration engine—attempting to limit it to the specific environment where sellers use "computerized information ... to facilitate sells" is redundant and not limiting whatsoever.

tion for a product" does not change the claim scope. This is because the added elements in CWC's construction already appear elsewhere in the claim language. The solvers in CWC's construction are software-based logic rules for product compatibility with configuration and presentation options. *See* '015 Patent col. 7:15–9:3. These solvers are tied to the claim language of "determining ... a plurality of customization options *associated* with the product." '015 Patent 13:39–40 (emphasis added). Likewise, the proposed language of "access[ing] information from a database to configure product category and/or options" mimics the claim language of "determining ... which customization options are included in the inventory." '015 Patent 13:39–42. Reading the claim as a whole shows it only calls for a general purpose computer to perform the abstract idea, which is not sufficient to satisfy the machine prong of the MOT test. *See Bancorp*, 687 F.3d at 1273, 1278 (affirming the district court's ruling that a general purpose computer does not satisfy the machine prong of the MOT test).

Additionally, the configuration engine does not perform the claimed invention in a specific way that makes it essential to the invention. Despite CWC's assertion to the contrary, a store clerk, armed with only a pencil and paper, can *receive* a question about men's basketball sneakers, *determine* the options available (color, brand, size, etc.) and the availability of those options in inventory, *prepare* a list of those available options, and *present* that list to the customer. Thus, claim 1 covers the mental process of inventory-based selling limited only by the non-essential configuration engine of a computer system. *Cf. SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed.Cir.2010) (finding the claimed GPS receiver essential to the claimed method of determining the GPS position in part because a human

cannot perform the necessary step of receiving satellite signals). Accordingly, the configuration engine is a nonessential general purpose computer and thus fails to satisfy the machine prong of the MOT test.

Claim 1 also fails the transformation prong of the MOT test. CWC argues the invention meets the transformation prong by transforming product queries from a customer into a list of product options. Docket No. 69 at 26. This is a misreading of the claim. The invention *receives* product queries, it does not transform them. '015 Patent col. 13:37–38. For example, a customer might ask for the brand, color, and size of men's basketball shoes that are available in inventory. This query remains the same even though the store clerk responds back with the list of several brands, colors, and sizes of men's basketball shoes. The *transformation* in this scenario is the selection of available options in inventory based upon the query. The store clerk simply reorganized the inventory for purchase based upon the query. "[M]ere manipulation or reorganization of data ... does not satisfy the transformation prong." *Cybersource*, 654 F.3d at 1375; *see also Bancorp*, 687 F.3d at 1273 (holding the claim failed the transformation prong because it did "not transform the raw data into anything other than more data"). Accordingly, claim 1 fails the MOT test.

Because claim 1 is directed to the ineligible abstract idea of inventory-based selling without meaningful limitations, it is thus is invalid under 35 U.S.C. § 101.

### *Claims 2–4 and 10–11*

 Claim 2 recites "[t]he method of claim 1, wherein the list of customization options is presented by way of a user interface for the computer system." '015 Patent col. 13:48–50. As claim 2 depends on ineligible claim 1, the dispositive question is whether the additional limitation of

"user interface for the computer system" meaningfully limits the claim scope.

■ Limiting the presentation of customization options to the user interface of a computer system provides a token and conventional, post-solution limitation that is insufficient to render the claim patent eligible. *See Bilski II*, 130 S.Ct. at 3230–31 (the abstract idea of hedging risk is not patentable despite the post-solution limitations of hedging risk in energy markets and using well-known mathematical techniques); *Prometheus*, 132 S.Ct. at 1297–98, 1300–01 (the limitation of determining the level of relevant metabolites in the blood is a conventional extra-solution step for the claimed method of optimizing therapeutic efficacy). The claim already recites a computer system that *receives* a product query from a customer and *prepares* a list for presentation. Presenting this list through the computer system's "user interface" is a token and conventional step. Additionally, the user interface is a conventional piece of the general computer system that fails to satisfy the MOT test. Accordingly, claim 2 is directed to ineligible subject matter and thus invalid under 35 U.S.C. § 101.

■ The rest of the asserted claims similarly depend from claim 1 and add various limitations to the way in which the list of customization options are presented. Claim 3 requires the list to be presented by a "communication to a remote computer system across a communication network." '015 Patent col. 13:51–53. Claim 4 requires the customization options to be presented "from a server hosting the configuration engine to a client communicatively coupled to the server via the Internet." *Id.* at col. 13:54–57. Claim 10 requires the customization options to be presented by "a user interface displayed at a remote computer system communicatively coupled to the computer system via a communica-tion network." *Id.* col. 14:15–18. Claim 11 requires the customization options to be presented by "a user interface displayed at a client communicatively coupled to the computer system via the Internet." *Id.* at col. 14:19–22.

Each of these claims recites the same general formula: receive a product query, determine the customization options and their availability in inventory, prepare a list of the customization options, and present the list. The claims only vary by the medium in which the list of customization options is presented. However, these media are neither a central part of the solution nor integral to the performance of the method. Rather, presenting a list via a user interface, or through the internet, is a token post-solution activity that does not meaningfully limit the abstract idea of inventory-based selling. Further, the media are part of a general purpose computer system that merely reorganizes the available products from inventory based upon a customer query. Accordingly, the remaining asserted claims are directed to an ineligible abstract idea and thus invalid under 35 U.S.C. § 101.

## MOTION TO STAY

Non-party GSI Commerce Solutions, Inc. ("GSI") provides the accused e-commerce platform used by several of the Defendants. On September 4, 2013, GSI filed a petition with the Patent Trial and Appeals Board ("PTAB") requesting a Covered Business Method ("CBM") review of the '015 Patent. Docket No. 83, Ex. B (Petition for Post–Grant Review). If the PTAB initiates CBM proceedings, one or more of the asserted claims may be ruled invalid. As a consequence, Defendants move for a stay of litigation pending the CBM. Because the asserted claims are invalid, Defendants' Motion to Stay is moot.

## CONCLUSION

For the foregoing reasons, asserted claims 1–4 and 10–11 are invalid under § 101 for covering unpatentable abstract ideas. Accordingly, Defendants' Motion for Judgment on the Pleadings is **GRANTED** and Defendants' Motion to Stay is **DENIED AS MOOT.**

So ORDERED and SIGNED this 21st day of January, 2014.